IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRUCE RICH,

    Plaintiff,

v.                                                           CASE NO. 1:10-cv-00157-MP-GRJ

EDWIN G. BUSS, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion For Summary Judgment (Doc. 38). Defendant Hicks, who was served after the first motion for summary judgment was filed, has also filed a Motion for Summary Judgment (Doc. 42) expressly adopting and incorporating the initial motion. Plaintiff has filed a response in opposition. (Doc. 49.) Accordingly, this matter is ripe for review. For the reasons discussed below, the motions for summary judgment (Docs. 38, 42) are due to be **GRANTED.**

### I. ALLEGATIONS OF THE COMPLAINT

Plaintiff, a state prisoner, proceeding *pro se* brought this suit pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., and 42 U.S.C. § 1983. (Doc. 1.) Plaintiff is an Orthodox Jew housed at Union Correctional Institution in Union County, Florida. As an Orthodox Jew, he sincerely

believes that he must keep a kosher diet as mandated by the Torah. (*Id.* at 8, 10.)[1] This requires that Plaintiff eat food that is derived from a religiously acceptable source, prepared and served in a religiously acceptable way, and meat dairy products may not be mixed. Kosher food must not come into contact with non-kosher food. (*Id.* at 9-10.) Plaintiff contends that corrections officials are violating his First Amendment and federal statutory rights to practice his religion by not providing him with strictly kosher food. (*Id.* at 13.) Plaintiff also contends that "the failure to provide a Kosher diet of well-balanced meals containing sufficient nutritional value to preserve health violates the Eighth Amendment." (*Id.* at 12.) Plaintiff states that he is prevented "from eating normally" and is forced to purchase limited-choice kosher items from the inmate canteen. (*Id.* at 6.) Plaintiff admits that it would cost the Florida Department Corrections ("DOC") more to provide him with a kosher diet than the standard cost for feeding an inmate, but Plaintiff rejects cost as justification for denying him a kosher diet. (*Id.* at 12, 15.) Plaintiff suggests that the DOC utilize kitchen areas used for the department's discontinued Jewish Dietary Accommodation Program (JDAP) to prepare kosher food and then transport it to inmates, or that the department permit him to purchase packaged, shelf-stable kosher meals at his own expense. (*Id.* at 8-9.)

     Plaintiff names as defendants in his suit the secretary of the DOC as well as seven other prison officials. For relief, Plaintiff seeks an injunction requiring Defendants

---

[1] Page numbers for Doc. 1 refer to the CM/ECF imprinted page numbers (1-44), as Plaintiff's handwritten page numbers at the bottom of his complaint are not in sequence.

*Case No.: 1:10-cv-157-MP-GRJ*

to "provide him with a nutritionally balanced and adequate Kosher diet" as well as monetary damages from each of the Defendants. (*Id.* at 15-16.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## III. DEFENDANTS' EVIDENCE

Defendants' submit in their statement of material undisputed facts that: (1) Plaintiff can choose from an alternative entree program which includes dairy and eggs

but not meat or a vegan program where all animal products are avoided; (2) it would be cost-prohibitive for the DOC to provide kosher meals to inmates; (3) the implementation of a kosher meal program would present "serious security issues" including the perception of preferential treatment, retaliation, increased gang activity, and increased staffing requirements for separate kosher food preparation areas; (4) the DOC's existing food service policies are rationally related to legitimate penological interests; and (5) the existing food service policies serve compelling governmental interests and are the least restrictive means to serve those interests. (Doc. 38, pp. 18-19.)

Defendants have filed the affidavit of Kathleen Fuhrman, Public Health Nutrition Manager for the DOC. Ms. Fuhrman states that it would be "cost prohibitive" to supply Plaintiff and any other inmates kosher meals. Shelf stable kosher entrees cost between $2.52 to $2.95; frozen kosher entrees cost "much more." Additional food items would be needed to ensure nutritional adequacy, bringing the raw food cost for kosher entrees to $4.49 to $5.71 per day. An additional $.81 per day would be incurred due to the need for disposable containers and utensils. Ms. Fuhrman estimates that the yearly cost to provide an inmate kosher meals would be $1,934.50 to $2,379.80, compared to $584.00 per year for an inmate receiving regular meals. (Doc. 38, Exh. A.) If frozen kosher entrees were used, the cost would be higher. (*Id.* at 3.)

As of July 18, 2011, 402 prisoners indicated they are Seventh Day Adventists, 3,745 are Muslim, and 2,136 indicated they are of the Jewish faith. If these 6,283 additional inmates–who identify with religious groups that have previously maintained that kosher diets are necessary–were to be provided kosher meals, the additional cost

to the DOC would be $12,154,463.35 to $14,952,283.40 per year. Ms. Fuhrman states the Plaintiff has two food service options available to him if he wishes to avoid non-kosher meat or animal products: the alternate entree meal program, which is meat-free but allows dairy and eggs; or the vegan meal program, which would enable him to avoid all non-kosher animal products. (*Id.* at 4.)

Defendants also filed an affidavit of James Upchurch, Chief of the Bureau of Security Operations. (Doc. 38, Exh. B.) Mr. Upchurch states that the DOC provides vegan and alternate entree options for inmates whose religious beliefs would be accommodated by such diets, and that pork and pork products have been entirely eliminated from DOC food service programs. He states that "serious security issues" would arise if a kosher diet were offered such as the one sought by Plaintiff, and that some of these issues manifested themselves during the DOC's Jewish Dietary Accommodation Program (JDAP) in 2007. The primary security issue, said Mr. Upchurch, is that providing such a special diet would be seen by other inmates as preferential treatment which would negatively impact inmate morale and the orderly operation of the institutional environment. Additionally, inmates would likely claim belief in other religious groups to obtain the kosher diet, especially if it is believed to be of better quality and/or provides more food. (*Id.* at 2.) These types of efforts by inmates were "reported extensively" during the operation of JDAP. Mr. Upchurch states that if the DOC attempted to determine religious entitlement to a special menu or enforce any criteria related to such a determination, "discord and unrest" would arise in the inmate population, and an increase in confrontational incidents involving staff and inmates is of

significant concern. Security staff attention would be diverted from primary security functions to addressing issues arising from such a dietary program.

Another security concern experienced during JDAP – and which would likely continue if a few specialized kitchens were used – is that inmates, including gang members, would attempt to manipulate the system to gain assignment to special institutions for gang and other associational purposes. Furthermore, the logistical issues related to Plaintiff's suggestion that food be prepared in special kitchens and transported to other institutions would require vehicles, food carriers, and staff, straining the DOC's scarce resources. (*Id.* at 3.) Mr. Upchurch states that if members of the general inmate population believed that the cost of the kosher diet was negatively impacting the quality of their food, it would likely lead to retaliation against the kosher inmates or otherwise disrupt the institution. Finally, maintaining and securing a kosher area of the general kitchen would divert the already limited kitchen security staff from their responsibilities in operating a large kitchen with a large number of inmate workers. (*Id.* at 4.)

Defendants also submitted DOC procedure number 604.301, which describes its food service standards. The document describes the alternate and vegan meal options available to inmates; describes authorized religious holiday menus; and indicates that all vegetables will be prepared without meat, meat fat, meat-based broth, or butter. (Doc. 38, Exh. C.)

## IV. PLAINTIFF'S EVIDENCE

Plaintiff has presented three items of evidence in response to Defendants' motions for summary judgement. First, Plaintiff has attached his own unsworn affidavit wherein he describes his religious upbringing and education; and his adherence to the laws and traditions of his faith. Plaintiff asserts that he only eats kosher and as such eats what he can purchase from the limited kosher offerings available at the inmate canteen, to the detriment of his nutritional needs. Plaintiff states that he was placed in confinement twice in the previous 22 months and during that time went without food for over a month and that despite multiple requests, corrections officials would not send him uncooked, raw vegetables and fruits. Plaintiff states that his soul would be negatively affected if he ingested anything non-kosher. Plaintiff asserts that he has offered to pay for his kosher meals but this was denied; the Aleph Institute offered to send pre-packaged kosher meals for him but this was also denied. Plaintiff states that the vegan and alternate meals offered by the DOC are not kosher due to the way they are prepared. Plaintiff asserts that eating only kosher foods is a non-negotiable tenet of Judaism. (Doc. 49, Exh. A.)

Plaintiff also submitted a November 11, 2011 letter from Menachem Katz, Director of Outreach Programs for the Aleph Institute, to Plaintiff. Mr. Katz states that he recently met with the new secretary in Tallahassee (presumably the secretary of the DOC) and that they are on track to open a kosher kitchen "down south." Mr. Katz stated that kosher meals have been served at SFRC South Unit for 15 months "with none of the issues the government is claiming in your case." Mr. Katz stated that there

have been no security concerns and rather than a "run on the program," many inmates had actually left the program. Mr. Katz requested that when a kosher kitchen was opened and inmates were able to transfer to that facility, Plaintiff would drop his lawsuit. (Doc. 49, Exh. B.)

Finally, Plaintiff offers a "Statement of Interest of the United States" filed in *Willis v. Commissioner, Indiana Dep't of Corrections,* Case No. 1:09-cv-815-JMS-DML (S.D. Ind. January 14, 2011). The Government urged the court in that case to refrain from issuing a stay of an injunction preventing the Indiana Department of Corrections from adhering to its policies regarding kosher meals pending an appeal. (*Id.*)

## V. DISCUSSION

Plaintiff contends that Defendants, by not providing him with a kosher diet, have violated RLUIPA, the First Amendment, and the Eighth Amendment.

### A. RLUIPA dietary claim

To establish a *prima facie* case under RLUIPA, "a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." *Smith v. Allen,* 502 F.3d 1255, 1276 (11th Cir. 2007); 42 U.S.C. § 2000cc-1(a). If a plaintiff establishes a *prima facie* case, the burden shifts to the government to "demonstrate that the challenged government action 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering that compelling governmental interest.'" *Smith*, 502 F.3d at 1276 (quoting 42 U.S.C. § § 2000cc-1(a), 2000cc-2(b)). But "[c]ontext matters in the application of that standard," and it should be applied with "due deference to the experience and expertise of prison

and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (internal citations omitted).

Defendants have not disputed that the kosher diet Plaintiff seeks is a sincerely held tenet of his religion. Nor have they disputed that their failure to provide a kosher diet to him substantially burdens his religious practice. Accordingly, the burden shifts to Defendants to demonstrate a compelling state interest and that the decision not to provide Plaintiff a kosher diet is the least restrictive means of serving that compelling interest.

In *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), *cert. denied,* 128 S. Ct. 707 (2007), and *Linehan v. Crosby,* 2008 WL 3889604 (N.D. Fla. 2008), *aff'd*, 346 Fed. Appx. 471 (11th Cir. 2009), the Fifth Circuit and this Court addressed scenarios similar to the instant case. In *Baranowski*, the court held that while a Jewish kosher diet was a valid exercise of the prisoner's religious beliefs and a failure to provide it substantially burdened his free exercise of that belief, RLUIPA was not violated because the "dietary policy of not providing kosher meals is the least restrictive means of furthering a compelling government interest." *Baranowski*, 486 F.2d at 124-25. The court looked to affidavits provided by prison officials, who stated that providing kosher meals would be too costly, would jeopardize the nutritional meals of inmates receiving standard meals, would breed resentment among other inmates, and that other religious groups would demand similar diets. The *Baranowski* court affirmed the trial court's grant of summary judgment to Defendants on his RLUIPA claim.

Similarly, this Court in *Linehan* granted summary judgment in favor of defendants on a RLUIPA claim where the plaintiff, a Seventh-Day Adventist, sought a kosher diet. "[T]he excessive cost, as well as administrative and logistic difficulties, of implementing a kosher meal plan in the Florida prison system are compelling state interests, and the current vegan and vegetarian diets are the least restrictive means of addressing this compelling interest." *Linehan*, 2008 WL 3889604 at *2. The Court noted that, according to the affidavits submitted by DOC officials (including Ms. Furhman and Mr. Upchurch, whose affidavits were submitted by Defendants in the instant case), the special treatment would cause unrest among other prisoners, resulting in significant security risks, and that the cost would be far too great. *Id.* at *1-*2.

The evidence before the Court is virtually identical. The cost and security concerns expressed by DOC officials in *Linehan* still exist. It would, according to Ms. Furhman, cost the DOC an additional $12,154,463.35 to $14,952,283.40 per year to provide kosher diets for Muslim, Jewish, and Seventh Day Adventist prisoners, who would have to be treated equally. (Doc. 38, Exh. A.) Furthermore, "serious security issues" would also be implicated if Plaintiff were provided a kosher diet, including: decreased inmate morale and orderly operation of facilities if certain inmates are seen as receiving special treatment; inmates might profess belief to a religious group to obtain a special diet; efforts by the DOC to determine religious entitlement would cause "discord and unrest" and increased confrontational incidents; security staff would be diverted from their primary functions to addressing issues related to the kosher diet; and the program could be manipulated for gang activity. Logistical issues would also

be implicated if food were to be prepared in special kitchens and transported to other institutions. (Doc. 38, Exh. B.)

Plaintiff suggests that he should be permitted to pay for his own meals, which would then be brought into the prison system. However, while this might alleviate some of the cost concerns for his individual meals, allowing him to receive special meals would still implicate the cost, security, and logistical concerns expressed by DOC officials in the affidavits before the Court.

Accordingly, Plaintiff has failed to come forward with evidence to prove his RLUIPA kosher diet claim. Summary judgment should be entered in favor of Defendants.

### B. First Amendment claim

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court held that prisoners retain First Amendment rights, but "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 348 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). To ensure that prison officials are afforded appropriate deference by the courts, the Court has established a "reasonableness" test that is less restrictive than the test normally applied to alleged infringements of fundamental constitutional rights. The Court further explained:

> "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." This approach ensures the ability of corrections officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,' and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to "resolution by decree."

*Id.* at 349-50 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987) and *Procunier v. Martinez,* 416 U.S. 396, 405 (1974)) (citations and footnotes omitted).

The RLUIPA "affords confined persons greater protection of religious exercise than what the Constitution itself affords." *Smith,* 502 F.3d at 12566 (citations and quotation marks omitted).  The compelling state interest test is less favorable to defendants than the reasonableness test.  Accordingly, because Defendants have prevailed on the RLUIPA claim, it follows that they are entitled to summary judgment on Plaintiff's First Amendment claim.  Defendants have demonstrated that their failure to provide Plaintiff a kosher diet is reasonably related to legitimate penological interests and that providing the current vegan and vegetarian diets are the least restrictive means of addressing this compelling state interest.  Summary judgment, therefore, should be granted to Defendants on Plaintiff's First Amendment claim.

### C.  Eighth Amendment claim

Plaintiff claims that prison officials have violated his Eighth Amendment rights because they will not serve him a kosher diet, and as a result, he must choose from a limited selection of kosher food at the inmate canteen.  Plaintiff alleges that his diet of inmate canteen food is nutritionally inadequate.  He does not allege any specific side effects of his diet.

The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  After incarceration, "only the 'unnecessary and wanton infliction of pain' . .

constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citations omitted)).  Where, as here, the claim is based upon the deprivation of food, such a claim can only constitute cruel and unusual punishment if the prisoner is denied the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981)).

A viable Eight Amendment claim has both an objective and subjective component. Under the objective component the prisoner must not only show that a condition "pose[s] an unreasonable risk of serious damage to his future health or safety" but also that the "risk of which he complains is not one that today's society chooses to tolerate." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004). In other words, the challenged condition must be "extreme" and "deprive ... [the prisoner] of the minimal civilized measures of life's necessities." *Id.*  The subjective component requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 154, 1258 (11th Cir. 2000).

As discussed in detail above, the DOC is not required by the RLUIPA or the First Amendment to provide Plaintiff with a kosher diet.  Plaintiff does not dispute that the alternative entree or vegan meal options are available to him or that the food served in

those programs is nutritionally adequate.  Rather, Plaintiff has chosen not to eat the meals made available to him and instead eats from the inmate canteen where, though limited, kosher options are available.  The DOC's failure to provide kosher meals for budgetary, security, and logistical reasons does not constitute denial of the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 303; *Chandler,* 379 F.3d at 1289-90. Because there is no dispute that the DOC provides alternative meals – and Plaintiff has not offered any evidence that those alternative meals are nutritionally inadequate – summary judgment is due be granted in favor of Defendants on Plaintiff's Eighth Amendment claim.

## VI. RECOMMENDATION

Having carefully reviewed the record, this Court concludes that Defendants are entitled to summary judgment in their favor.  It is respectfully **RECOMMENDED** that the Defendants' motions for summary judgment (Docs. 38 and 42) should be **GRANTED** and the Clerk should be directed to enter final judgment in favor of Defendants.

**IN CHAMBERS**  this 12th day of January 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**